UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Josh Snyder,<br><br>                              Plaintiff,<br><br>v.<br><br>Norfolk Southern Railway Co.,<br><br>                              Defendant. | Case No. 3:24-cv-00090<br><br>**COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |

## INTRODUCTION

1. Josh Snyder applied for and was offered a signalman position by Norfolk Southern Railway Co. Then, after a Snyder submitted to a physical, Norfolk Southern withdrew the offer, citing his supposed inability to obtain a Commercial Driver's License because of his monocular vision. Norfolk Southern's justification for withdrawing the job offer makes little sense for two reasons: (1) Driving a commercial vehicle is not an essential function of the signalman position, and (2) Snyder's monocular vision does not, in fact, prevent him from obtaining his CDL, which Norfolk Southern knew or should have known, both based on the plain language of the regulations governing CDL and because Norfolk Southern knew Snyder had his medical card, the precursor to a CDL.

2. Norfolk Southern's above-described conduct violates the Americans with Disabilities Act, 42 U.S.C. § 12101(a), *et seq.*, which not only prohibits discrimination on the basis of employees' medical conditions but also requires employers to accommodate those conditions. In fairness to Norfolk Southern, the ADA is fundamentally different from most antidiscrimination statutes in that it allows employers to discriminate on the basis of employees' medical conditions when those conditions prevent the employees from performing their job's essential functions with

or without a reasonable accommodation. But it cannot be seriously argued that Norfolk Southern reasonably believed that Snyder's condition prevented him from performing the essential functions of the job he was offered. Accordingly, Norfolk Southern violated the ADA by withdrawing the job offer, and it should be ordered re-award Snyder the position and pay to him the money he's lost because of its illegal conduct.

## PARTIES

3. Snyder resides in this District.

4. Norfolk Southern, which is a corporation headquartered in Atlanta, Georgia, operates trains across the United States, including in this District.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1331.

6. Venue is proper under 28 U.S.C. § 1391 because Snyder resides in this district, Norfolk Southern operates in this district, and the illegal conduct occurred in this district.

## FACTUAL ALLEGATIONS

7. Snyder suffers from monocular vision.

8. Snyder's monocular vision results from a physical disorder, physical condition, or anatomical loss affecting his special sense organs.

9. Snyder's monocular vision does not prevent him from holding a CDL.

10. Snyder's monocular vision does not prevent him from performing the essential functions of a signalman position.

11. Signalmen install and maintain the signals controlling train traffic.

12. Signalmen typically work with a crew, not by themselves.

13. While one person on the crew may need to be able to drive a commercial vehicle,

depending on the task being performed, not every person on the crew needs to be able to drive a commercial vehicle.

14. Accordingly, Norfolk Southern does not require that every employee holding a signalman position have a CDL.

15. Neither does Norfolk Southern require that every employee holding a signalman position be able to hold a CDL.

16. Norfolk Southern does not require that each applicant to whom it offers a signalman position hold a CDL.

17. Norfolk Southern does not require that each applicant to whom it offers a signalman position be able to hold a CDL.

18. On April 27, 2022, Snyder applied for a signalman position with Norfolk Southern.

19. On May 9, 2022, Norfolk Southern offered the position to him.

20. Snyder accepted the offer.

21. After Snyder accepted the offer, Norfolk Southern ordered him to submit to a physical.

22. Snyder submitted to the physical.

23. The physical demonstrated what Norfolk Southern that Snyder suffers from monocular vision.

24. This is something Norfolk Southern knew at the time it offered Snyder the position.

25. Despite already knowing that Snyder suffers from monocular vision, Norfolk Southern withdrew his job offer, telling him that his monocular vision prevented him from being able to obtain a CDL, which it claimed was an essential function of the signalman position.

26. Operating a commercial vehicle is, in fact, not an essential function of every

signalman position.

27. Snyder's monocular vision does not, in fact, prevent him from obtaining a CDL.

28. This is something Norfolk Southern knew or should have known both based on the plain language of the regulations governing CDLs and because it knew Snyder had his medical card, the precursor to him obtaining a CDL.

29. Even assuming arguendo that being able to obtain a CDL is an essential function of every signalman position and that Norfolk Southern was unsure whether Snyder could obtain a CDL, it could have had had him submit to a road test, which would have clarified the matter.

30. Norfolk Southern did not have Snyder submit to a road test.

31. It is not at all clear why Norfolk Southern did not have Snyder submit to a road test.

32. To the extent that Norfolk Southern expected Snyder to arrange for and pay for the road test, that was not communicated to him.

33. In any event, requiring disabled employees to pay for testing that is not required of other employees is itself a violation of the Americans with Disabilities Act.

34. So too was Norfolk Southern withdrawing the job it offered to Snyder.

## CAUSES OF ACTION

### Violation of 42 U.S.C. § 12101, *et seq.*

35. At all relevant times, Norfolk Southern was Snyder' employer within the meaning of the ADA.

36. At all relevant times, Snyder was disabled within the meaning of the ADA.

37. Snyder is a qualified individual within the meaning of the ADA.

38. Section 12112(a) of the ADA prohibits employers from discriminating against employees on the basis of disability in regard to "job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms,

conditions and privileges of employment."

39. Section 12112(b)(1) of the ADA defines "discriminat[ing] against a qualified individual on the basis of disability" to include "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee."

40. Discriminating against a qualified individual with a disability also includes utilizing standards or criteria "that have the effect of discriminat[ing] on the basis of disability" and "using qualification standards, employment tests, or other selection criteria that screen out or tend to screen out" individuals with disabilities. 42 U.S.C. §§ 12112(b)(3)(A), 12112(b)(6).

41. The ADA further defines discrimination as "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . ." 42 U.S.C. § 12112(b)(5)(A).

42. Norfolk Southern discriminated against Snyder on the basis of disability when it withdrew the job offer it made to him because of his medical condition.

43. Because Norfolk Southern violated 42 U.S.C. § 12112, Snyder has suffered and will continue to suffer loss of income, emotional distress, and other damages. Snyder is also entitled to attorney's fees and costs in connection with these claims.

44. Norfolk Southern committed the above-alleged acts with reckless or deliberate disregard for Snyder' rights. As a result, Snyder is entitled to punitive damages.

## REQUEST FOR RELIEF

45. Snyder requests that the Court find Norfolk Southern acted in violation of the ADA.

46. Snyder further requests that the Court order Norfolk Southern to:

- award him the position it had offered to him;
- pay to him an award for compensatory damages arising from loss of

       income and benefits in an amount to be determined by the trier of fact;

- pay to him an award for garden-variety emotional distress in an amount to be determined by the trier of fact;

- pay to him an award for costs (including litigation and expert costs), disbursements, and attorney's fees; and

- pay to him an award for of the maximum amount of punitive damages allowed by statute.

47. Snyder further requests that the Court order judgment against Norfolk Southern for all other relief available under the ADA and such other relief as the Court deems just and equitable.

**COUNSEL FOR PLAINTIFF**

April 24, 2024

/s/ Nicholas D. Thompson
Nicholas D. Thompson, WI 1079903
Casey Jones Law
323 N Washington Ave, Suite 200
Minneapolis, MN 55401
Phone: (757) 477-0991
Email: nthompson@caseyjones.law